UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                  Bankruptcy No. 04-30236
                                                                             Chapter 7
Racing Services, Inc.,

          Debtor.

_____/

**MEMORANDUM AND ORDER**

This Chapter 7 (converted from Chapter 11) case is before the Court on the application of Kennelly & O'Keeffe, Ltd. (K&O) for allowance of interim attorney's fees and expenses pursuant to 11 U.S.C. § 331. K&O seeks $22,916.00 in attorney's fees and $579.12 for reimbursement of expenses. By Order entered March 16, 2004, the Court approved the application of K&O as counsel for Debtor Racing Services, Inc. effective February 3, 2004. The Court further ordered the issuance of a retainer check in the amount of $25,000.00 to K&O. The United States Trustee, the State of North Dakota, and the Unsecured Creditors Committee each filed objections to K&O's fee application. The objecting parties offer numerous bases, discussed more fully below, for the disallowance of some or all of the fees and expenses sought by K&O.

The matter was heard June 3, 2004.

I. Factual Background

On February 3, 2004, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On February 12, 2004, the Delaware bankruptcy court ordered the transfer of the case to the District of North Dakota. This Court filed an Order on June 15, 2004 converting the Debtor's Chapter 11 case to Chapter 7 for cause.

AO 72A
(Rev.8/82)

II. Conclusions of Law

Interim applications for disbursements of compensation for services rendered and costs incurred by a debtor's attorney are authorized by 11 U.S.C. § 331. <u>Friedman v. Melp, Ltd.</u> (In re Melp, Ltd.),179 B.R. 636, 639-40 (E.D. Mo. 1995). The factors listed in section 330 apply to interim applications. Id. at 640.

Under section 330(a)(1), the court may award "reasonable compensation for actual, necessary services rendered" by the attorney and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A) and (B). Subsection (a)(2) permits the court, on its own motion or on the motion of the trustee or other party in interest, to award compensation that is less than the amount of compensation requested. Subsection (a)(3)(A) lists various factors the court shall consider in determining the amount of reasonable compensation including (1) the time spent; (2) the rates charged; (3) the necessity of the services for administration of the case; (4) the reasonableness of the amount of time spent in light of the complexity, importance and nature of the problem, issue, or task addressed; and (5) the reasonableness of the requested compensation compared to the customary compensation charged by comparably skilled practitioners in nonbankruptcy cases. 11 U.S.C. § 330(a)(3)(A)-(E); <u>Bachman v. Pelofsky</u> (In re Peterson), 251 B.R. 359, 363-64 (B.A.P. 8th Cir. 2000). Under subsection (a)(4), a court cannot award fees if the services rendered were unnecessarily duplicative. Further, the court may not award compensation if the services rendered were not reasonably likely to benefit the estate or were unnecessary for the administration of the estate. Thus, by negative implication, a court may award compensation if the services rendered were reasonably likely to benefit the debtor's estate, necessary for the administration of the case, and not unnecessarily duplicative.

2

The court has broad power and discretion to award or deny attorney fees and a duty to examine them for reasonableness. Walton v. LeBarge (In re Clark), 223 F.3d 859, 863 (8th Cir. 2000). The burden is on the attorney to prove that the proposed compensation is reasonable. Id.

The lodestar method is the appropriate approach for determining reasonable compensation under section 330. Chamberlain v. Kula (In re Kula), 213 B.R. 729, 736 (B.A.P. 8th Cir. 1997). The lodestar method is calculated as the number of hours reasonably expended multiplied by a reasonable hourly rate. Id.; see also Novelly v. Palans (In re Apex Oil Co.), 960 F.2d 728, 732 (8th Cir. 1992) (adopting lodestar approach). To determine the reasonableness of rates and hours, section 330(a)(3) directs courts to consider the factors listed above.

The objecting parties do not dispute the reasonableness of the hourly rates charged by K&O. Rather, they dispute the reasonableness of several of the services provided by K&O and the amount of time spent on certain services.[1]

Upon consideration of the documents submitted, the arguments of counsel, and the Court's own review, the Court finds that the fee application suffers many maladies including some generally unreasonable fees, lumping of services into single billing entries, duplication of services, and services that were not reasonably likely to benefit the Debtor's estate. Indeed, many of the entries in the fee application suffer more than one of these problems.

---

[1] The State of North Dakota sought disallowance of the fees in their entirety, alleging K&O represented an interest adverse to the interest of the estate by promoting the personal interests of Susan Bala, the sole shareholder and president of the Debtor. The Court has considered this argument and concludes that while many of the billing entries were for the benefit of Bala rather than the estate, that such does not represent a conflict of interest meriting disallowance of K&O's fees in their entirety. Instead, the Court deals with services that were not reasonably likely to benefit the estate through the disallowance of fees for specific services as well as an across-the-board reduction of remaining fees. See infra.

3

A.	Unreasonable Fees

In seeking payment of fees, professionals should be guided by the general principle that time for which they do not bill their nonbankruptcy clients should not be included in a fee application in a bankruptcy case. In re ACT Mfg., Inc., 281 B.R. 468, 484 (Bankr. D. Mass. 2002). Thus time spent attending pre-engagement meetings should not be included in the fee application. Id. In addition, time spent to perform conflicts checks cannot be billed to the estate. Id.

Further, the United States Trustee asserts the compensation sought by K&O for various billing entries for preparing the application of counsel, declaration of proposed attorney, and engagement letter is unreasonable. Specifically, the United States Trustee asserts that a comparison of these documents to the same documents filed in the case by Stevens & Lee, the Debtor's proposed Delaware counsel, reveals that the documents are essentially identical—only the names and amounts of hourly compensation were changed. The Court agrees. Given the minimal and purely clerical work involved in preparing the documents, the Court concludes that the following fees pertaining to pre-engagement meetings or conferences, conflicts checks, and the preparation of the documents mentioned above are unreasonable:

| | |
|---|---|
| 3/5/2004 | Conference with Susan at Stefanson Law Office to obtain information as to status of RSI ($500.00 MDR 2.50 hours) |
| 3/8/2004 | Telephone conference with Susan Bala and review documents and the Rules of the Commission and statutes regarding status of RSI ($200.00 MDR 1 hour) |
| 3/9/2004 | Conference with client and Randy Stefanson regarding RSI status and plans regarding RSI ($600.00 MDR 3 hours) |
| | Attend meeting in Moorhead; memo to file in regard to the various filed lawsuits and potential actions for recovery of assets ($247.50 CMK 1.50 hours) |

4

AO 72A
(Rev.8/82)

                Draft application for appointment of counsel, declaration of proposed attorney and engagement letter ($75.00 MJS 1.50 hours)

3/10/0404      Conference with Susan Bala, telephone conference with client and Randy Stefanson and revise engagement letter ($600.00 MDR 3.00 hours)

                Conference with client. And perform conflicts check re: representation ($82.50 TMO 0.50 hour)

                Meeting with Max and Susan Bala regarding pending litigation, motion and proposed litigation and plans for the company along with responses to pending motions ($495.00 TMO 3.00 hours)

                Run conflicts check ($49.50 CMK 0.30 hour)

                Finish drafting engagement letter and order granting application; complete documents with signatures ($50.00 MJS 1.00 hour)

3/11/2004      Finalize the engagement letter, application to employ, order employing, disclosure, and serve and file same ($200.00 MDR 1.00 hour)

                Telephone conference with Susan Bala; conference with Max and review of application ($82.50 TMO 0.50 hour)

                Conference with MDR regarding litigation ($49.50 CMK 0.30 hours)

                Make revisions to documents and prepare for filing and mailing ($25.00 MJS 0.50 hour)

The Court therefore disallows $ 3,256.50 for these unreasonable expenses.[2]

      The United States Trustee objects to a $200.00 billing entry on March 19, 2004 for preparing a certificate of service, serving the order appointing K&O as counsel, and filing the documents with the Court. He also objects to a separate billing entry on the same date for $25.00 for serving the order appointing K&O as counsel because the bankruptcy clerk's office served those documents. Further, he asserts such expenses are clerical in nature and should be included in the applicant's overhead. He

---

[2] The Court notes that several of these billing entries also employ lumping of services, and they arguably involve the duplication of services and services of questionable benefit to the estate.

5

also objects to a $25.00 billing entry on April 5, 2004 for typing because of purely clerical nature of typing.

The classification of services as clerical or non-clerical does not decide the question of compensability under section 330 because clerical services may be compensated in the proper context. In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 851 (3rd Cir. 1994). The bankruptcy court reviews fee applications not for whether each particular service undertaken by a paralegal is clerical or paraprofessional by nature, but for whether nonbankruptcy attorneys typically charge and collect from their clients fees for that particular service when performed by a member of that profession, and the rates charged and collected for those services. Id. at 849.

The Court agrees that services provided by the bankruptcy clerk's office are not compensable. Further, although clerical work may be compensable, the Court is not convinced that the specific services identified by the United States Trustee are within the purview of services for which nonbankruptcy attorneys typically charge. Accordingly, the specific billing entries on March 19, 2004 and April 5, 2004 discussed above are unreasonable and disallowed in the total amount of $250.00.

The United States Trustee also asserts a $100.00 billing entry on March 16, 2004 for K&O to call its client regarding the entry of the order approving K&O's employment and to set up a meeting is not reasonable because this was a routine communication. The Court agrees and disallows compensation in the amount of $100.00.

At a hearing on April 8, 2004, the Court ordered the appointment of a trustee and directed Susan Bala no longer be involved in the operation of the Debtor. The State of North Dakota asserts K&O's billing for services after that date are unreasonable. The Court concludes that the services

6

provided on April 9, 2004 were unnecessary and did not benefit the estate. The fees for these services in the amount of $400.00 are disallowed.

B.   Duplication of Services

The Unsecured Creditors Committee asserts the fee application reveals some duplication of service, and again, the Court agrees. Specifically, on March 24, 2004, the following three billing entries clearly suggest such duplication:

3/24/2004    Prepare, serve and file objection to application of Receiver for Interim Compensation ($300.00 MDR 1.50 hours)

Draft objection to receiver's interim application for compensation, file and serve ($35.00 MJS 0.70 hour)

Draft objection to receiver's interim application for compensation; file and serve ($35.00 MJS 0.70 hour)

Clearly the latter two entries are essentially identical, but the first entry also describes the same services as the latter entries. Upon review of the document involved in these billing entries, the Court finds the latter two billing entries to be unreasonable as duplicative and disallowed in the total amount of $70.00.

The fee application also includes billing entries for two attorneys from K&O to attend a hearing on April 8, 2004:

4/8/2004    Prepare for and attend motion hearings; conference with Susan and Max post-hearing ($660.00 TMO 4.00 hours)

Telephone conference with client and meeting concerning the outcome of the bankruptcy hearing and attend hearing ($1,500.00 MDR 7.50 hours)

Generally, it is appropriate for only one attorney from a firm to attend a hearing unless adequate explanation is given. See In re Grosswiler Dairy, Inc., 257 B.R. 523, 531(Bankr. D. Mont. 2000);

7

In re Smuggler's Beach Properties, Inc., 149 B.R. 740, 745 (Bankr. D. Mass. 1993). Reduction in fees is warranted if multiple attorneys from the same firm attend the same hearing unless counsel adequately demonstrates that each attorney present at the hearing contributed in some meaningful way. See In re Fleming Companies, Inc., 304 B.R. 85, 91 (Bankr. D. Del. 2003); In re Jefsaba, Inc., 172 B.R. 786, 801 (Bankr. E.D. Pa. 1994). Although K&O argued at the hearing that there was no duplication of services for turning to another attorney for litigation help, the Court is not satisfied that this argument, without further substantiation, adequately demonstrates that each of the K&O attorneys contributed during the hearing in a meaningful way. The Court therefore disallows as unreasonable the $660.00 in fees for TMO's services on April 8, 2004.

C.    Lumping of Services

The practice of lumping is often defined as grouping two or more separate and unrelated activities in one billing entry. In re Southern Diesel, Inc., 309 B.R. 810, 817 (Bankr. M.D. Ala. 2004). Lumping destroys a court's ability to review counsel's work for reasonableness. Id.; Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 272 B.R. 830, 834 (Bankr. D. Vt. 2002); In re NWFX, Inc., 267 B.R. 118, 230 (Bankr. W.D. Ark. 2001). It is a practice universally disapproved of by bankruptcy courts for two reasons. First, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Second, it prevents the court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together. Southern Diesel, Inc., 309 B.R. at 817; In re Recycling Industries, Inc., 243 B.R. 396, 406 (Bankr. D. Colo. 2000).

8

Courts have taken various approaches to lumping. Some have denied compensation altogether for activities that are lumped together. Others have globally adjusted all of the lumped time entries, reducing the requested compensation in an across-the-board fashion. See In re Staggie, 255 B.R. 48, 55-56 (Bankr. D. Idaho 2000); Recycling Industries, Inc., 243 B.R. at 407.

Lumped entries in the fee application, aside from those already disallowed include:

| | |
|---|---|
| 3/12/2004 | Telephone conference with Susan, file documents and telephone conference with bankruptcy clerk's office ($200.00 MDR 1.00 hour) |
| 3/19/2004 | Work with client on schedules; prepare letter to Drewes ($165.00 TMO 1.00 hour) |
| 3/26/2004 | Amend motion for turnover and redraft the withdrawal of a motion regarding utility companys [sic] ($400.00 MDR 2.00 hours) |
| 3/28/2004 | Finalize amended motion to compel receiver to turnover property of estate and review proposed order and research appointment of creditors committee ($300.00 MDR 1.50 hours) |
| 4/7/2004 | Finalize brief. Conference with client concerning bankruptcy hearing and numerous phone calls ($2,000.00 MDR 10.00 hours) |
| 4/8/2004 | Telephone conference with client and meeting concerning the outcome of the bankruptcy hearing and attend hearing ($1,500.00 MDR 7.50 hours) |

Although the Court is satisfied that some of the lumped activities would be fully compensable under the requirements of section 330 had they not been lumped together, the Court cannot say with exactitude how much compensation is appropriate for these activities because they are lumped together. Neither the Bankruptcy Code nor the Bankruptcy Rules prescribe any particular format for a fee application, but it must be specific enough so that the Court can meet its responsibility to provide meaningful review of the application.

The Court estimates that 40% of these activities would be compensable had the K&O professionals not lumped them together. Some of the billing entries include rather minor tasks that

9

would otherwise not be compensable, e.g., "telephone conference with the bankruptcy clerk's office." Some of the billing entries also involve questionable billing judgment and services that were not reasonably likely to benefit the state as more fully discussed below. The Court will disallow 60%, or $2,739.00, of the requested compensation for these 23 hours of lumped services.

D.   Services Not Reasonably Likely to Benefit the Estate

A fee application will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate. In re Reed, 890 F.2d 104, 106 (8th Cir. 1989). This rule is based upon the legislative history of section 330(a) and the unfairness of allowing the debtor to deplete the estate by pursuing its interests to the detriment of creditors. Keate v. Miller (In re Kohl), 95 F.3d 713, 714 (8th Cir. 1996). Courts have been fairly restrictive in their interpretation of what benefits the estate. In re Holden, 101 B.R. 573, 576 (Bankr. N.D. Iowa 1989).

The United States Trustee and the Unsecured Creditors Committee both object to the allowance of fees in connection with a deposition of Wayne Drewes, the state court receiver in the case. The following billing entries involve services related to this deposition:

| | |
|---|---|
| 4/1/2004 | Telephone conference with Wayne Drewes regarding the receivership, deposition and rescheduling of hearings ($100.00 MDR 0.50 hours) |
| 4/5/2004 | Review correspondence from Bruce Carlson regarding Wayne Drewes deposition; legal research regarding deposition notice ($99.00 TMO 0.60 hour) |
| | Review documents in preparation for Wayne Drewes deposition ($165.00 TMO 1.00 hour) |
| 4/6/2004 | Office conference with client regarding deposition and prepare for depositoin [sic] and taking of deposition ($1,400.00 MDR 7.00 hours) |
| | Conference with Max and Susan Bala to prepare for deposition and address issues regarding motions and April 8th hearing ($495.00 TMO 3.00 hours) |

10

       Prepare for Drewes deposition; read and review information from Bala and bankruptcy filings ($280.50 TMO 1.70 hours)

4/7/2004  Prepare for and take deposition of Wayne Drewes ($577.50 TMO 3.50 hours)

The state court receiver's performance was not an issue in either the proceedings on the dismissal of the case or the appointment of a Chapter 11 trustee. The Court cannot divine any benefit to the estate in connection with the deposition of the state court receiver, and K&O has not offered an explanation as to the same. As such, K&O failed to establish these services were reasonable, and the court disallows $3,117.00 in fees. See Holden, 101 B.R. at 576 (disallowing fees and expenses pertaining to Rule 2004 examinations).

  Finally, the United States Trustee and the Unsecured Creditors Committee argue that several of the remaining services provided by K&O in this case were not provided for the exclusive benefit of the estate. As one example, prior to the appointment of a trustee, the state court receiver was responsible for the operation of the Debtor's business, but substantial fees and costs referenced in the application relate to matters relating to the Debtor's ongoing business. At the hearing on the fee application, the United States Trustee suggested that approximately half of the work K&O performed benefitted the estate while the other half benefitted Susan Bala.

  K&O responded that Susan Bala is the sole shareholder and president of the Debtor, so itemizations of the work the law firm performed necessarily referred to Susan Bala, because she runs the business.

  In this case, the Court concludes that a reasonable professional representing the Debtor would have performed many of the services performed by K&O in this case, but not to the extent K&O did in this case. The requested fees are quite substantial, especially considering the debtor-in-possession

11

did not file schedules or a disclosure statement, much less a plan of reorganization, the Chapter 11 case lasted only four months, and K&O's involvement in the case spanned approximately 30 days. While it is not necessary to have a successful reorganization for debtor's counsel to be awarded fees, fees may be denied when counsel should have realized that reorganization was not feasible and therefore services in that effort did not benefit the estate. Id. at 714-15 (citing In re Coones Ranch, Inc., 7 F.3d 740, 744 (8th Cir. 1993); In re Lederman Enter., Inc., 997 F.2d 1321, 1324 (10th Cir. 1993) (fees may be disallowed where counsel knew or should have known that reorganization was not a viable possibility)). Chapter 11 does not provide license to perform services and generate fees in a vacuum without considering the possibilities of recovery for the professional's constituents. In re Channel Master Holdings, Inc., 309 B.R. 855, 861 (Bankr. D. Del. 2004). Moreover, only the services that assist a debtor in performing the debtor's legal duties—as opposed to exercising legal privileges—are compensable from the estate. In re Dawson, 180 B.R. 478, 479 (Bankr. E.D. Tex. 1994). The court must take into consideration whether reasonable billing judgment was exercised. In re Nilges, 301 B.R. 321, 325 (Bankr. N.D. Iowa 2003).

The Court has reviewed the application for fees and expenses at length to consider whether K&O's services were reasonably likely to benefit the bankruptcy estate. In many respects, the objections filed are well taken. The Court will reduce the remaining requested fees after disallowances discussed above by 50%. The fee application sought a total of $22,916.00 for professional services rendered. The Court disallowed a total of $10,592.50 ($3,256.50 + 250.00 + 100.00 + 400.00 + 70.00 + 660.00 + 2,739.00 + 3,117.00) for generally unnecessary services, duplication of services, and lumping of services. The Court disallows 50% ($6,161.75) of the remaining $12,323.50 ($22,916.00 - 10,592.50).

AO 72A
(Rev.8/82)

In light of the foregoing, the Court concludes K&O shall be compensated for services rendered in the total amount of $6,161.75. This amounts to approximately 27% of the total fees requested ($579.12). Rather than indulge in a line by line review of expenses, the Court allows 27% of the expenses requested, or $156.36 ($579.12 x 0.27). K&O, therefore, is entitled to total attorney fees and expenses of $6,318.11. All remaining fees and expenses requested which have not been approved are disallowed.

Accordingly, the Application for Allowance of Interim Attorney's Fees and Expenses is APPROVED IN PART and DENIED IN PART. The fees and expenses of Kennelly and O'Keeffe, Ltd. as attorneys for Debtor Racing Services, Inc. are allowed in the total amount of $6,318.11. All other fees and expenses requested are disallowed.

**SO ORDERED.**

Dated this July __14__, 2004.

_____

**WILLIAM A. HILL, JUDGE**
**U.S. BANKRUPTCY COURT**

Notice of Entry
Under F.R.B.P. 9022 (a)
FILED

JUL 1 4 2004

Clerk
U.S. Bankruptcy Court
District of North Dakota

13