UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                                          Bankruptcy No. 04-30236
                                                                                                Chapter 7
Racing Services, Inc.,

        Debtor.
_____/

**MEMORANDUM AND ORDER**

This case is before the Court on the application of the Kaler Doeling Law Office for the allowance of interim attorney fees and expenses filed on November 19, 2007. Kaler Doeling seeks a total of $35,725.80 in fees and expenses. Creditor Susan Bala filed an objection to Kaler Doeling's application on December 10, 2007. Bala alleges numerous bases, discussed more fully below, for the disallowance of some or all of the fees and expenses sought by Kaler Doeling.

The matter was heard on February 6, 2008. Post-trial briefs were submitted by Bala and Kaler Doeling on February 25, 2008, and March 5, 2008, respectively.

I. Factual Background

On February 3, 2004, Debtor Racing Services, Inc. (RSI) filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On February 12, 2004, the Delaware bankruptcy court ordered the transfer of the case to the District of North Dakota. This Court ordered the conversion of RSI's Chapter 11 case to Chapter 7 for cause and appointed Kip Kaler the Chapter 7 trustee on June 15, 2004.

Kaler Doeling asserts in its application for interim compensation that it was authorized to represent Trustee Kaler by Order entered September 2, 2004. The referenced Order, however, authorized payment for fees and expenses to the state court receiver, Wayne Drewes, and his

attorneys, McNair, Larson & Carlson, Ltd. The Court did not approve the application of Kaler Doeling as counsel for Trustee Kaler until January 13, 2005.

  A.  Criminal Conviction

After a lengthy trial, a jury convicted RSI and Susan Bala, president and sole shareholder of RSI, of 12 counts of violations of federal law on February 7, 2005. The jury found that $99,013,200 was traceable to property involved in money laundering and illegal gambling business violations, and the United States District Court issued a preliminary forfeiture judgment against RSI in the amount of $99,013,200 on April 11, 2005.

RSI and Bala filed a timely notice of appeal to the Eighth Circuit Court of Appeals. On the appellate court's own motion, the appeals were severed and RSI was ordered to obtain counsel and have that attorney enter an appearance on behalf of RSI.

On April 17, 2006, Bala moved the bankruptcy court for the release of $35,000 to hire an attorney to represent RSI in the criminal appeal. Trustee Kaler objected, arguing that RSI's attorney fees for the appeal of the criminal conviction were not an administrative expense that should be awarded. He also argued that Bala's claim was untimely because he did not have adequate time to find an acceptable attorney. Lastly, he stated that he was unwilling to accept the representation of an attorney chosen by Bala because, "Throughout this case, Ms. Bala's interests have been adverse to this bankruptcy estate and it is undoubtedly in her best interest as opposed to the estate's best interest that it hire a criminal defense attorney to represent it on this appeal, and more particularly, an attorney of her choosing." The State of North Dakota also filed an objection to Bala's motion, arguing that only Trustee Kaler can hire professionals to perform legal work for the estate. The

Court denied Bala's motion for the release of funds on the bases proffered by Trustee Kaler and the State.

  B.  Settlement Agreement

On May 10, 2005, Trustee Kaler and the United States entered a stipulation regarding the forfeiture judgment, and Trustee Kaler brought a motion for the approval of the stipulation on June 1, 2005. PW Enterprises, Inc. (PWE), the largest unsecured creditor in RSI's bankruptcy case, filed on objection to the stipulation. The Court approved the stipulation on July 13, 2005, over PWE's objection. PWE appealed, and on November 5, 2005, the Bankruptcy Appellate Panel (BAP) held that the Court erred in approving the stipulation without holding a hearing and remanded the matter.

On remand, the Court scheduled a hearing on the motion for approval of the stipulation. PWE was the only party to object to the stipulation. At the hearing on January 10, 2005, the parties indicated to the Court that they had reached a resolution of PWE's objection to the stipulation and that a settlement agreement consistent with the resolution would be submitted for court approval.

A settlement agreement was filed on March 9, 2006. Under the agreement, the bankruptcy estate agreed to give the United States $132,500, a $1.4 million judgment held by RSI against Cesta Punta Deportes S.A. de C.V., and any claim or receivable against Cesta Punta and Philadelphia Park in settlement of the forfeiture. In exchange for $150,000 payable to the bankruptcy estate and a release of all claims that RSI had against PWE, PWE received all of the claims against RSI and receivables owed to RSI from various creditors, including a $1.6 million claim against EDENSA that had to be enforced in Mexico. PWE also agreed to bid at least $35,000 for the interest of Susan Bala in SBE, LLC. The estate retained all of the bankruptcy estate's cash assets and unliquidated

3

assets not transferred to PWE. The bankruptcy estate received $17,500 more under this agreement than under the previous one.[1]

The State of North Dakota and Bala entered objections to the settlement agreement. A hearing was held on April 27, 2006. At the conclusion of the hearing, the Court ordered a 30-day continuance so that an investigator could look into RSI's claims and receivables and determine their value.

The next hearing on the settlement agreement was held on June 15, 2006. Trustee Kaler reported that the investigator's findings did not disclose anything beyond what he already knew, such that the facts were the same as at the first hearing. The Court entered an order approving the settlement agreement on June 20, 2006.

    C.    Criminal Appeal to the Eighth Circuit

Kaler Doeling represented RSI at the criminal appeal to the Eighth Circuit, but only after the Eighth Circuit issued an Order to Show Cause in April 2006 which advised that RSI's appeal may be dismissed because RSI did not have an attorney representing it. Kaler Doeling filed a brief on behalf of RSI in June 2006, and the Eighth Circuit denied Kaler Doeling's motion for leave to withdraw from the appeal on September 11, 2006. Kaler Doeling was required by the Eighth Circuit to appear in St. Louis for the oral arguments held in the appeal on September 28, 2006.

Bala submitted an audio recording of Attorney Gene Doeling's appearance before the Eighth Circuit in the criminal appeal. Judge Loken, the Chief Judge for the Eighth Circuit, was highly critical of Kaler Doeling's representation, at one point stating, "I think your performance has consistently been inadequate in this case, and I'm very upset by it." He further stated, "You put your

---

[1] The $17,500 is the difference between the $150,000 paid by PWE to the estate, and the $132,500 the estate paid to the United States.

4

client in a conflict position with a co-defendant after having filed a brief piggy-backing that defendant's brief." Doeling conceded that the trustee was in a conflict position in the appeal once the settlement agreement was reached with the United States. Judge Loken also stated that Doeling was "not a proper representative of a criminal defendant."

The Eighth Circuit overturned the criminal conviction and forfeiture of RSI and Bala on March 6, 2007. This reversal mooted the settlement agreement Trustee Kaler entered with the United States, and the assets conveyed to the United States were recovered by the estate.

D.     Administrative Expense Claim

Kaler Doeling also represented the bankruptcy estate in contesting Bala's claim for an administrative expense resulting from a rent claim. Her claim was allowed but subordinated to all other claims. Bala appealed the order to the BAP, which affirmed. Based on the reversal by the Eighth Circuit Court of Appeals in the criminal case against Bala and RSI, this Court vacated the order subordinating Bala's claim. Kaler Doeling is representing the bankruptcy estate in the pending appeal of that decision to the BAP.

II. Conclusions of Law

Section 331 of the Bankruptcy Code permits disbursements to professionals for interim compensation of fees and reimbursement of expenses as provided for under section 330. 11 U.S.C. § 331. Under section 330(a)(1), the Court may award a professional employed under section 327 reasonable compensation for actual, necessary services and reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a)(1)(A) and (B).

The lodestar method is the approach used by courts in the Eighth Circuit to determine reasonable compensation awarded pursuant to section 330. <u>Stalnaker v. DLC, Ltd.</u>, 376 F.3d 819,

5

825 (8th Cir. 2004). This method calculates the lodestar amount by multiplying the reasonable hourly rate by the reasonable number of hours required. Id.

Section 330(a)(3) lists the factors to be considered in determining the amount of reasonable compensation to be awarded. The Court is directed to consider the nature, extent, and value of the applicant's services, taking into account relevant factors including: (1) the time spent; (2) the rates charged; (3) the necessity of the services for administration of the case; (4) the reasonableness of the amount of time spent in light of the complexity, importance and nature of the problem, issue, or task addressed; and (5) the reasonableness of the requested compensation compared to the customary compensation charged by comparably skilled practitioners in nonbankruptcy cases. See 11 U.S.C. § 330(a)(3)(A)-(E); Bachman v. Pelofsky (In re Peterson), 251 B.R. 359, 363-64 (B.A.P. 8th Cir. 2000). The Court shall not award fees if the services rendered were unnecessarily duplicative. 11 U.S.C. § 330(a)(4)(A)(I). Further, the Court shall not allow compensation if the services rendered were not reasonably likely to benefit the estate or were unnecessary for the administration of the estate. 11 U.S.C. § 330(a)(4)(A)(ii)(I) and (II).

The Court, on its own motion or on the motion of the trustee or another party in interest, may award compensation that is less that the amount requested. 11 U.S.C. § 330(a)(2). The Court has broad power and discretion to award or deny attorney fees. Walton v. LeBarge (In re Clark), 223 F.3d 859, 863 (8th Cir. 2000). The applicant bears the burden of proving that the proposed compensation is reasonable. See id.

6

    A.     Criminal Appeal

Kaler Doeling's application includes $5,721.00 for professional services provided by Doeling with regard to the appeal of RSI's criminal conviction to the Eighth Circuit. Additionally, Kaler Doeling seeks reimbursement for an airline expense of $791.20 and travel expenses of $377.31 related to the criminal appeal. Bala seeks disallowance of these fees and expenses because of the absence of any benefit to the estate and Kaler Doeling's alleged conflict of interest, inadequacy of performance, and improper conduct.

Kaler Doeling argues that its requested fees and expenses are reasonable because the Eighth Circuit stated an intention to dismiss the appeal of RSI, while preserving the criminal appeal of Bala, if RSI did not appear and defend the appeal. Although Kaler Doeling admits to riding the coattails of Bala's attorney on the appeal, it argues that its limited participation kept RSI's appeal from being dismissed, and the judgment against RSI was ultimately overturned. Kaler Doeling also points out that Bala sought to use $35,000 from the bankruptcy estate to pay a criminal defense attorney to represent RSI – a request denied by this Court – and Kaler Doeling accomplished the same end for one-fifth of the cost to the estate.

At the oral argument in the criminal appeal, Judge Loken, the Chief Judge for the Eighth Circuit, had harsh words for Doeling regarding the representation provided to RSI. Specifically, Judge Loken stated, "You put your client in a conflict position with a co-defendant after having filed a brief piggy-backing that defendant's brief." Doeling ultimately conceded that the trustee had a conflict of interest once the settlement agreement was reached with the United States. The Court also cannot ignore Judge Loken's statements that Doeling was "not a proper representative of a criminal defendant" and that Doeling's "performance has consistently been inadequate in this case."

7

The Court accordingly agrees with Bala that Kaler Doeling is not entitled to full compensation of its requested fees for professional services related to the criminal appeal. The Court will allow compensation of $450.00 for the preparation time and appearance before the Eighth Circuit and $900.00 for Doeling's time to travel to and from St. Louis because the appearance was necessary to prevent RSI's dismissal from the appeal. The Court will also allow reimbursement of $1,168.51 for Kaler Doeling's airline and travel expenses for the same reason. The rest of the requested fees related to the criminal appeal, totaling $4,371.00, will be disallowed given the Eighth Circuit's assessment of the quality of Kaler Doeling's representation and Kaler Doeling's concession that it rode the coattails of Bala's attorney.

  B.  Settlement Agreement

Kaler Doeling's application includes $11,139.00 for services relating to the settlement agreement with the United States and PWE. Bala argues that these fees should be disallowed in their entirety because Trustee Kaler was in a conflict position and lacked competence to enter the agreement and because the settlement agreement compromised the bankruptcy estate.

RSI was subject to a $99 million forfeiture when Trustee Kaler entered the settlement agreement with PWE and the United States. Reaching a resolution that satisfied most of the interested parties required the reversal of an earlier stipulation on appeal, multiple hearings on remand, and the employment of an investigator. Given the circumstances at that time, the Court deemed the settlement a reasonable resolution of the forfeiture.

Upon the reversal of RSI's criminal conviction, the assets conveyed to the United States in settlement of the forfeiture were recovered by the estate. More problematic, however, is the release of all claims that RSI had against PWE, and the transfer of RSI's receivables to PWE that remain

8

in force. In hindsight, the agreement was probably not in the best interest of the estate, but Trustee Kaler's lack of confidence that the criminal conviction and forfeiture would be overturned was not unreasonable. Moreover, Trustee Kaler thoroughly investigated the various claims of RSI. He determined that although there were causes of action, the expense of litigation would be tremendous with an uncertain likelihood of success on the merits and unlikely prospects of recovery of assets in the event of successful litigation. The findings of an independent investigator did not change his view.

Trustee Kaler is an experienced and reputable attorney, and the Court deems Bala's argument that he was conflicted and incompetent to be without merit. Although the settlement may have compromised the estate given the unpredictable turn of events in the criminal case, Trustee Kaler cannot be expected to have anticipated the reversal of the criminal forfeiture. Accordingly, the fees requested by Kaler Doeling with regard to the settlement agreement are allowed unless disallowed for another reason below.

C.   Administrative Expense Claim

Bala objects to the fees related to the subordination of her administrative expense claim in the total amount of $10,588.00. She asserts that Trustee Kaler created the rent liability and willfully breached the lease by failing to pay the rent. She further asserts he breached his fiduciary duties of good faith and fair dealing and should not be compensated for the legal fees for his improper actions.

The services rendered by Kaler Doeling with regard to the subordination of Bala's claim are not unreasonable. Although the basis for the subordination – Bala's criminal conviction – was ultimately reversed and the subordination order was vacated, the facts at the time supported the need for the legal services provided. As with the settlement agreement, Trustee Kaler cannot be expected

9

to have anticipated the unlikely change in circumstances which undercut the basis for the action. Bala's assertions are without merit, and the fees requested by Kaler Doeling with regard to the subordination of Bala's administrative expense claim are allowed unless disallowed for another reason below.

    D.    Fees Incurred before Court Approval of Employment

Kaler Doeling states in its application that it was authorized to represent Trustee Kaler by Order entered September 2, 2004. This representation is incorrect. The Court did not approve the application of Kaler Doeling until January 13, 2005.

A trustee may not employ an attorney, accountant, or other professional person without the court's express approval. 11 U.S.C. § 327(a). The procedures for obtaining this approval are outlined in Bankruptcy Rule 2014, which requires among other things that the application for employment contain a detailed disclosure of the attorney's connections with the debtor, creditors and any other party in interest. Fed. R. Bankr. P. 2014(a). Retention pursuant to this process is a prerequisite to compensation. In re Koerkenmeier, 344 B.R. 603, 608 (Bankr. W.D. Mo. 2006).

Allowing an attorney to dispense with the requirement of obtaining court approval before rendering services to the estate has the potential to frustrate the purposes behind the statutory scheme. In re Aultman Enterprises, 264 B.R. 485 (E.D. Tenn. 2001). The purpose of the rule requiring prior court authorization of a professional's appointment is to eliminate volunteerism and aid the court in controlling estate administrative expenses. Land West, Inc. v. Coldwell Banker Comm'l Group, Inc. (In re Haley), 950 F.2d 588, 590 (9th Cir. 1991); In re Garden Ridge Corp., 326 B.R. 278, 280 (Bankr. D. Del. 2005); In re McDaniels, 86 B.R. 128, 129 (Bankr. S.D. Ohio 1988).

10

Compensation for services rendered without the court's approval or prior to the retention date established by the court is not allowed. In re Fibermark, Inc., 349 B.R. 385, 394 n.3 (Bankr. D. Vt. 2006); In re Westside Creek Ltd. Partnership, 93 B.R. 177, 179 (Bankr. E.D. Ark. 1988),.

Kaler Doeling seeks compensation for attorney fees totaling $1,390.00 for work performed prior to court approval of its application for employment on January 13, 2005. Specifically, the Court points to the following entries on the application:

| | | |
|---|---|---|
| 11/16/2004 | KMK | Prepare Sales Agreement, Notice and Motion and Order (1.00 hour; $160.00) |
| 12/28/2004 | GWD | Review file/draft motion for turnover on furniture/phone call with Pat/clarification of payment on furniture (1.30 hours; $195.00) |
| 1/3/2005 | GWD | review life insurance information/research (0.60 hour; $90.00) |
| | GWD | Review and revise turnover motion (0.30 hour; $45.00) |
| 1/5/2005 | GWD | work on life insurance premium recovery case (1.80 hours; $270.00) |
| 1/6/2005 | GWD | phone conversation with Melissa at Foster Klima/phone conf. With Loretta Frankol at Guardian Ins. Regarding cashing out ins. policy (0.40 hour; $60.00) |
| 1/10/2005 | GWD | research on RSI tax refund recovery issue (2.00 hours; $300.00) |
| 1/11/2005 | GWD | review tax document/conference with D.Horab (1.40 hours; $210.00) |
| 1/12/2005 | GWD | phone conference with Pat L/need records on payment of taxes (0.20 hour; $30.00) |
| | GWD | phone conference with Pat L/re: location of bank statements reflecting RSI tax payments (0.20 hour; $30.00) |

Because compensation for services rendered prior to the retention date established by the court is not allowed, these fees totaling $1,390.00 are disallowed.

E.  Other Issues

1.  Trustee Duties

Section 704 sets forth the duties of a trustee. These duties include, among others, collecting and reducing to money the property of the estate, investigating the financial affairs of the debtor, and furnishing information about the estate as requested by a party in interest. 11 U.S.C. § 704.

In order for a trustee to accomplish the duties imposed by the Bankruptcy Code, a trustee may hire his own firm or himself as counsel. 11 U.S.C. § 327(d) ("The court may authorize the trustee to act as attorney . . . for the estate if such authorization is in the best interest of the estate.") There is, however, a limitation imposed by section 328(b) on the trustee's compensation:

> If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant *only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.*

11 U.S.C. § 328(b) (emphasis added).

Trustees generally perform all ministerial and administrative duties of the estate, whereas it is the responsibility of an attorney appointed to represent the estate to exercise professional skills and expertise beyond the ordinary knowledge and skill of the trustee. In order to support an award of professional fees by a bankruptcy court, it is necessary that the services be professional in nature, rather than ministerial or administrative services. See In re Moreno, 295 B.R. 402 (Bankr. S.D. Fla. 2003); In re Gary Fairbanks, Inc., 111 B.R. 809, 811 (Bankr. N.D. Iowa 1990). "Administrative duties," for which trustee who wears two hats both as trustee and as his/her own attorney may not be awarded any attorney fees include answering questions from creditors (including routine calls related to administration of estate) and ministerial chores such as telephone calls and correspondence

12

with creditors. In re NWFX, Inc., 267 B.R. 118 (Bankr. W.D. Ark. 2001). Accordingly, before the attorney for the trustee can be compensated, the court must determine which services performed were truly legal in nature, and which were actually the ministerial duties of the trustee. In re Gary Fairbanks, Inc., 111 B.R. at 811.

    2.    Conclusory Descriptions

Applicants must provide the court with detailed information in support of their requests. Fed. R. Bankr. P. 2016. The time records supplied with the application must reveal not only the duration of each activity, but also the substance of that activity. In re Wabash Valley Power Ass'n, Inc., 69 B.R. 471 (Bankr. S.D. Ind. 1987). Records listing phone calls made and letters written, research performed, and meetings attended, without more, are insufficient to support an award of fees. Id. The application should detail the subject of conferences and phone calls. Id. Conclusory descriptions are inappropriate. In re Koerkenmeier, 344 B.R. 603, 610 (Bankr. W.D. Mo. 2006). The court "should not be required to search the record and perform conjectural metaphysical exercises to discover the reason for the legal services." In re Air Vermont, Inc., 114 B.R. 48, 51 (Bankr. D. Vt. 1988). Instead, the demarcation between trustee services and attorney services must be clear in the attorney's application, and the specific subject matter and nature of the problem that required legal services must be apparent from the records. U.S. v. Freeland (In re Spungen), 168 B.R. 373, 377 (N.D. Ind. 1993). Where insufficient explanatory information is provided for determining the precise nature of the services rendered, the court is compelled to determine that the services are not compensable as legal services. Id.

### 3. Duplication of Services

Next, under subsection 330(a)(4), a court cannot award fees if the services rendered were unnecessarily duplicative. 11 U.S.C. § 330(a)(4). Generally, it is appropriate for only one attorney from a firm to attend a hearing unless adequate explanation is given. See In re Grosswiler Dairy, Inc., 257 B.R. 523, 531(Bankr. D. Mont. 2000); In re Smuggler's Beach Properties, Inc., 149 B.R. 740, 745 (Bankr. D. Mass. 1993). Reduction in fees is warranted if multiple attorneys from the same firm attend the same hearing unless counsel adequately demonstrates that each attorney present at the hearing contributed in some meaningful way. See In re Fleming Companies, Inc., 304 B.R. 85, 91 (Bankr. D. Del. 2003); In re Jefsaba, Inc., 172 B.R. 786, 801 (Bankr. E.D. Pa. 1994).

### 4. Lumping

Finally, lumping two or more separate and unrelated activities in one billing entry is not permitted. In re Koerkenmeier, 344 B.R. at 610. Lumping destroys a court's ability to review counsel's work for reasonableness. Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 272 B.R. 830, 834 (Bankr. D. Vt. 2002); In re NWFX, Inc., 267 B.R. 118, 230 (Bankr. W.D. Ark. 2001). It is a practice universally disapproved of by bankruptcy courts for two reasons. First, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Second, it prevents the court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together. In re Southern Diesel, Inc., 309 B.R. 810, 817; In re Recycling Industries, Inc., 243 B.R. 396, 406 (Bankr. D. Colo. 2000).

The following time entries in the fee application suffer from one or more of the problems discussed in this section. The problem(s) with each is listed in brackets following the work description.

Forfeiture Issues/Settlement Agreement Issues

3/9/2005       GWD   phone conference with clerk/phone conference with AUSA/ (0.20 hour; $30.00) [trustee duties/lumping]

3/24/2005      GWD   Draft memo to trustee on forfeiture issues/pc with AUSA (1.10 hours; $165.00) [lumping]

6/21/2005      GWD   conf. with trustee/conf. With AUSA/begin drafting response to objection to settment [sic] agreement (3.50 hours; $525.00) [conclusory/lumping]

6/22/2005      GWD   continued research and draft response to motion opposing settlement/pc with AUSA Reisenauer (1.80 hours; $270.00) [conclusory/lumping]

6/23/2005      GWD   phone conference with atty Anderson at AG's office (0.20 hour; $30.00) [trustee duty/conclusory]

7/28/2005      GWD   phone conference with trustee/pc with AUSA (0.40 hour; $60.00) [conclusory/lumping]

8/3/2005       GWD   review briefs and caselaw before hearing, court hearing/ conf. with atty Wang after hearing (2.50 hour; $375.00) [lumping]

8/19/2005      GWD   phone conference with atty Wang/note to trustee (0.30 hour; $45.00) [conclusory/lumping]

8/22/2005      GWD   phone conference with atty Wang/oc with client (0.40 hour; $60.00) [conclusory/lumping]

9/19/2005      KMK   Rev. BAP draft brief - comments - C/Gene Doeling (0.50 hour; $80.00) [trustee duty/lumping]

12/27/2005     JS    Email/Gene; pc/Clerk of Court (0.30 hour; $18.00) [trustee duty/conclusory]

1/5/2006       GWD   review Fogelman letter/conf. with trustee/upcoming hearing/review documents/further discussions with trustee (2.70 hours; $405.00) [conclusory/lumping]

15

1/6/2006     GWD    discussions with trustee regarding PWE offer/research on sec. 853 bona fide purchaser status (0.60 hour; $90.00) [lumping]

1/19/2006    GWD    outline testimony for hearing, attend meeting with AUSA/forfeiture issues/review Lubic supplemental brief (2.90 hours; $435.00) [lumping]

1/10/2006    GWD    review docs before meeting with Lubic and AUSA, meeting before hearing with AUSA/and atty Lubic/ hearing on terms of stipulation (3.00 hours; $450.00) [lumping]

1/26/2006    GWD    review release/conf. with trustee (0.50 hour; $75.00) [conclusory/lumping]

1/27/2006    GWD    conf. with trustee/email to M Lubic (0.40 hour; $60.00) [conclusory/lumping]

1/31/2006    GWD    Review revised stipulation, draft motion to approve (0.70 hour; $105.00) [lumping]

2/10/2006    KMK    Pc/K. Reisenauer (2); rev. documents; email to M. Lubic (1.00 hour; $160.00) [conclusory/lumping]

3/8/2006     GWD    conf. with trustee/Draft motion to approve sale agmt (0.70 hour; $105.00) [conclusory/lumping]

3/9/2006     KMK    Several emails; pc/D. Fogelman (atty. for PWE) (0.50 hour; $80.00) [conclusory/lumping]

3/23/2006    KMK    Pc/R. Minch; rev. objection to settlement/R. Minch; email to Pat L.; instructions to Laurie (0.40 hour; $64.00) [trustee duty/conclusory/lumping]

4/26/2006    GWD    conf with trustee/court hearing on settlement (2.60 hours; $390.00) [conclusory/lumping]

10/5/2006    KMK    Oc/Gene; rev. Brief of PWE; email to R. Minch and his reply (0.40 hour; $64.00) [trustee duty/conclusory/lumping]

12/28/2006   KMK    Edit Settlement Agreement - email to N. Chase; rev. email/N.Chase (2) pc/N.Chase (0.50 hour; $80.00) [trustee duty/conclusory/lumping]

1/25/2007    KMK    Pc/N. Chase (settlement re: life ins.); rev. agreement (0.40 hour; $72.00) [trustee duty/lumping]

1/25/2007    KMK    Email to and from C. Simpson (0.20 hour; $36.00) [trustee duty/conclusory]

16

| | | |
|---|---|---|
| 2/14/2007 | KMK | Pc/Clerk of Bky. Ct.; pc/Nick Chase; several emails - clerk - N. Chase (0.40 hour; $72.00) [trustee duty/conclusory/lumping] |
| 2/21/2007 | KMK | Rev. notice of hearing (insurance policy); pc/clerk; instructions to Laurie (0.20 hour; $36.00) [trustee duty/lumping] |
| 3/20/2007 | KMK | Pc/Keith Reisenauer; motion to continue hearing on settlement agreement (0.30 hour; $54.00) [trustee duty/lumping] |
| 3/29/2007 | KMK | Pc/Roger Minch (various aspects of case - PWE, ND, S. Bala, admin. claim, criminal appeal) (0.20 hour; $36.00) [trustee duty] |
| 4/1/2007 | KMK | Rev. L/R. Minch; look at Bill of Sale to PWE (Bala); email to R. Minch (0.30 hour; $54.00) [trustee duty/conclusory/lumping |
| 6/25/2007 | KMK | Receive message/K. Reisenauer (atty. For USA) - instructions to Laurie) (0.20 hour; $36.00) [trustee duty/conclusory/lumping] |
| 6/27/2007 | KMK | C/K. Reisenour [sic] and N. Chase (U.S. Atty.); memo to file; L/J. Brakke (his conflict of interest); L/Guardian Life Ins. (1.00 hour; $180.00) [trustee duty/conclusory/lumping] |
| 6/29/2007 | KMK | Rev. L/US Atty.; edit L/Guardian (0.20 hour; $36.00) [trustee duty/conclusory/lumping] |

<u>Miscellaneous</u>

| | | |
|---|---|---|
| 1/13/2005 | GWD | Draft RSI tax refund complaint/work on insurance cash balance recovery (1.90 hours; $285.00) [lumping] |
| 1/14/2005 | GWD | draft Motion for Turnover on Ins. Proceeds/conf with trustee/review insurance docs and contract (2.30 hours; $345.00) [lumping] |
| 1/15/2005 | KMK | Edit Motion for Turnover; prepare Order; prepare Subpoena Duces Tecum (0.60 hour; $96.00) [trustee duty/lumping] |
| 1/18/2005 | KMK | Edit Subpoena Duces Tecum to Guardian Life; instructions to Laurie (0.30 hour; $48.00) [trustee duty/lumping] |
| 3/29/2005 | KMK | Pc/M. Beauchene (S. Bala's deposition for tomorrow); rev. S. Bala Motion to Prevent Deposition; prepare Response; email to S. Bala, J. Boulger, M. Beauchene and J. Baillie - oc/Gene; prepare for Deposition tomorrow) (2.00 hours; $320.00) [conclusory/lumping] |

17

| | | |
|---|---|---|
| 3/30/2005 | KMK | Rev. Order (depositions of S. Bala goes forward; prepare for deposition; deposition of S. Bala; email to Guardian Legal Dept.; oc/Pat L.; instructions to Laurie (3.00 hours; $480.00) [trustee duty/conclusory/lumping] |
| 3/31/2005 | KMK | Pc/Guardian Life Legal Dept.; instructions to Laurie (0.20 hour; $32.00) [trustee duty/conclusory/lumping] |
| 4/5/2005 | GWD | Court Appearance for Hearing on Turnover (0.50 hour; $75.00) [duplication] |
| 6/14/2005 | GWD | phone conference with atty Bailey (0.70 hour; $105.00) [conclusory] |
| 6/23/2005 | KMK | Rev. and edit our response to objection to settlement; oc/Gene; pc/Keith R. (0.60 hour; $96.00) [conclusory/lumping] |
| 6/24/2005 | KMK | Complete edit of response to objection; c/Gene (0.50 hour; $80.00) [lumping] |
| 11/2/2005 | KMK | Rev. pretrial statement - instructions to Laurie; Pc/IRS (0.20 hour; $32.00) [trustee duty/conclusory/lumping] |
| 3/14/2006 | GWD | phone conference with atty Fucheck/gen counsel of Am Tote (0.30 hour; $45.00) [conclusory] |
| 6/8/2007 | KMK | Rev. Email/C. Simpson (SEIR) (0.10 hour; $18.00) [conclusory] |
| 6/22/2007 | KMK | Rev. Material/C. Simpson (SEIR) (0.20 hour; $36.00) [conclusory] |

Subordination of Bala's Claim

| | | |
|---|---|---|
| 6/23/2005 | GWD | conf. with trustee/Legal Research/draft response to Bala's claim for administrative expense (2.60 hours; $390.00) [conclusory/lumping] |
| 6/29/2005 | GWD | legal reserach [sic]/brief/bala's adminstrative [sic] claim/revise brief/conf. with Pat/RSI/SBE records (3.00 hours; $450.00) [lumping] |
| 3/10/2006 | GWD | review appellate briefs/Bala appeal/research follow-up/conf. with trustee (2.40 hours; $$360.00) [lumping] |
| 3/13/2006 | GWD | phone conference with atty Minch (0.10 hour; $15.00) [conclusory] |
| 3/29/2006 | GWD | phone conference with atty Fogelman/conf with client (0.40 hour; $60.00) [conclusory/lumping] |
| 6/26/2007 | KMK | Email to Clerk and response; email to R. Minch; several emails (Re: Bala Motion to Vacate) (0.20 hour; $36.00) [trustee duty/conclusory/lumping] |

18

| | | |
|---|---|---|
| 8/20/2007 | KMK | Rev. pleading in preparation for 8/30 hearing; pc/R. Minch (0.40 hour; $72.00) [trustee duty/conclusory/lumping] |
| 8/22/2007 | KMK | Pc/R. Minch (0.20 hour; $36.00) [trustee duty/conclusory] |
| 8/23/2007 | KMK | Rev. several emails/R. Minch; reply (0.20 hour; $36.00) [trustee duty] |
| 8/30/2007 | KMK | Rev. supplemental brief/R. Minch; prepare for hearing (Bala Motion to Vacate Subordination; attend hearing; c/R. Minch (also present D. Lybeck and Gene Doeling (2.00 hours; $360.00) [duplication/lumping] |
| 9/10/2007 | KMK | Pc/R. Minch; complete documents for appeal (0.20 hour; $36.00) [lumping] |
| 9/18/2007 | KMK | Rev. several misc. filings re: BAP (0.20 hour; $36.00) [trustee duty] |
| 10/24/2007 | KMK | Rev. Table of Contents for Appendix; pc/R. Minch (0.20 hour; $36.00) [conclusory/lumping] |
| 10/25/2007 | KMK | Work on appeal (prepare statement of facts - research); email to R. Minch (2) (4.60 hours; $828.00) [conclusory/lumping] |
| 10/30/2007 | JS | Review Brief - Prepare Table of Contents and Table of Authorities; Pc/Clerk; L/Clerk (1.00 hour; $70.00) [lumping] |

These time entries total $9,747.00 in services. Although the Court is certain that some of these services would be fully compensable if they did not suffer from one or more of the discussed problems, the Court cannot say with exactitude how much compensation is appropriate for these activities because of their various problems. The lumping, in particular, makes it impossible to separate out compensable services from non-compensable ones. Neither the Bankruptcy Code nor the Bankruptcy Rules prescribe any particular format for a fee application, but it must be specific enough so that the Court can meet its responsibility to provide meaningful review of the application. The Court will disallow 50%, or $4,873.50, for the combined problems of duplication of services, trustee duties that are not compensable, conclusory descriptions, and lumping.

III.  Conclusion

Accordingly, the Application for Allowance of Interim Attorney's Fees and Expenses is APPROVED IN PART and DENIED IN PART.  The fees and expenses of Kaler Doeling as attorneys for the bankruptcy estate Debtor Racing Services, Inc. are allowed in the total amount of $25,091.30.[2]  All other fees and expenses requested are disallowed.

**SO ORDERED.**

Dated this March 26, 2008.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**

---

[2] $35,725.80 - 4,371.00 - 1,390.00 - 4,873.50 = $25,091.30